ANITA BIGGERSTAFF, EMPLOYEE, PLAINTIFF v. PETSMART, INC., EMPLOYER, ST. PAUL
TRAVELERS, CARRIER, DEFENDANTS

No. COA08-937

(Filed 7 April 2009)

**1. Workers' Compensation— carpal tunnel syndrome—pet groomer—findings supported by evidence**

Findings in a workers' compensation case about plaintiff's work as a pet groomer and her carpal tunnel syndrome were supported by competent evidence, which supported the conclusion that plaintiff suffered a compensable occupational disease.

**2. Workers' Compensation— temporary total disability— wage earning period—remanded for further findings**

A workers' compensation award of temporary total disability was remanded for further findings where it could not be determined from the record whether plaintiff earned wages during a relevant period.

Appeal by defendants from Opinion and Award entered 22 May 2008 by the Full Commission in the North Carolina Industrial Commission. Heard in the Court of Appeals 10 December 2008.

*Scudder & Hedrick, PLLC, by John A. Hedrick, for plaintiff-appellee.*

*Cranfill, Sumner & Hartzog, L.L.P., by J. Michael Ricci and Ashley Baker White, for defendant-appellants.*

BRYANT, Judge.

Defendants Petsmart, Inc. and St. Paul Travelers appeal from an Opinion and Award entered 22 May 2008 in the North Carolina Industrial Commission which denied plaintiff Anita Biggerstaff's claim of injury to her back but awarded total disability compensation at a weekly rate of $730.00 for Biggerstaff's claim of bilateral carpal tunnel syndrome arising out of the course of her employment. For the reasons stated herein, we affirm in part and reverse and remand in part the Opinion and Award of the Commission.

On 14 July 2006, Petsmart filed a Form 19, employer's report of employee's injury or occupational disease to the Industrial Commission, in which it stated that on 6 July 2006 Biggerstaff reported a

lower back or lumbar area injury. The injury was alleged to have occurred on 20 June 2006. Also, on 14 July 2006, Petsmart filed a Form 61, denial of worker's compensation claim. On 19 July 2006, Biggerstaff filed a Form 18, notice of accident to employer and claim, in which Biggerstaff described that on 20 June 2006 "while lifting a large dog onto [a] grooming table, [she] experienced back pain." She also filed a Form 33, request that her claim be assigned for hearing, stating that the injury affected her back and hands. On 21 August 2006, Petsmart filed a Form 33R, response to request that Biggerstaff's claim be assigned for hearing, and, on 6 October 2006, filed a Form 61, denial of worker's compensation claim.

At an initial pre-trial conference, the parties identified the issues for decision by the Commission: (a) whether Biggerstaff sustained a low back injury as a result of an accident or specific traumatic incident arising out of and in the course of her employment on 20 June 2006; (b) whether Biggerstaff contracted the occupational disease carpal tunnel syndrome as a result of her employment; and (c) what compensation was Biggerstaff entitled to receive as a result of her lower back injury and alleged carpal tunnel syndrome.

A hearing was held before Deputy Commissioner Philip A. Holmes on 17 April 2007. Deputy Commissioner Holmes concluded as follows:

1. [Biggerstaff] did not sustain a compensable injury by accident or specific traumatic incident arising out of and in the course of her employment with Petsmart on or about 20 June 2006.

2. The expert testimony was insufficient to establish the causal connection between [Biggerstaff's] alleged work injury on June 20, 2006 and her current condition.

Deputy Commissioner Holmes denied Biggerstaff's claim for workers' compensation benefits. Biggerstaff filed notice of appeal to the Full Commission.

On 19 March 2008, the Full Commission reviewed the prior Opinion and Award of the deputy commissioner, reviewed the briefs of the parties, and heard oral arguments. Therefore, the Commission made the following findings of fact regarding Biggerstaff's occupational disease claim—carpal tunnel:

39. Defendants retained Allan Gorrod, an ergonomist, to evaluate and prepare an ergonomic report in regard to plaintiff's Salon

Manager position with [Petsmart]. Although Mr. Gorrod was unable to quantify what amount of vibration is necessary to increase exposure to conditions consistent with cumulative trauma, as [Biggerstaff] has alleged, he expressed in his report that the duties of a Salon Manager did not place persons employed in the positions at "increased exposure to conditions consistent with cumulative trauma." However, the Full Commission finds that Mr. Gorrod mistakenly believed that approximately forty percent (40%) of [Biggerstaff's] duties were clerical in nature, when the greater weight of the evidence shows that approximately ninety percent (90%) of plaintiff's duties involved "hands-on" grooming of animals. In his testimony, Mr. Gorrod stated that he knew nothing about [Biggerstaff] or how she performed her work, and acknowledged that if [Biggerstaff's] duties involved more grooming than he had originally understood, the job would place her at greater risk of developing a cumulative trauma disorder, such as bilateral carpel [sic] tunnel syndrome, than was shown in his report. Also, the Full Commission finds that Mr. Gorrod observed [Petsmart's] groomers on, what the record shows, to be a slow day. Therefore, the work observed by Mr. Gorrod did not accurately reflect the typical pace of the work performed by [Biggerstaff].

. . .

41. Dr. Edwards and Dr. Krakauer, [Biggerstaff's] treating physician, are equally experienced and qualified to offer expert opinion evidence regarding the cause of carpal tunnel syndrome and whether an employment places an employee at an increased risk of developing that condition as compared to members of the general public not so employed. In reviewing the testimony of each physician in this matter, the Full Commission gives greater weight to the [o]pinions of Dr. Krakauer as opposed to Dr. Edwards. The Full Commission finds that Dr. Edwards opinions were based in part on Mr. Gorrod's report, which inaccurately represented that [Biggerstaff] performed clerical duties for forty percent (40%) of her day. Finally, Dr. Edwards never examined or evaluated [Biggerstaff].

42. Conversely, Dr. Krakauer was of the opinion that [Biggerstaff's] employment with [Petsmart] caused or significanly aggravated [Biggerstaff's] bilateral carpal tunnel

syndrome. He also expressed the opinion that [Biggerstaff's] employment placed her at an increased risk of developing bilateral carpal tunnel syndrome as compared to members of the general public. The Full Commission finds that Dr. Krakauer, as [Biggerstaff's] treating physician, personally examined an[d] evaluated [Biggerstaff]. Further, Dr. Krakauer testified that he was aware of the duties of a dog groomer, including exposure to vibrating clippers, and the hand, wrist, and arm motions necessary to perform those duties. In addition, Dr. Krakauer was aware that [Biggerstaff's] grooming duties consumed approximately 85 to 90% of her work day, as opposed to 40 to 60%, as assumed by Dr. Edwards and Mr. Gorrod.

43. Based on the greater weight of the evidence of record, the Full Commission finds that [Biggerstaff's] employment with [Petsmart] significantly contributed to her development of bilateral carpal tunnel syndrome. Further, [Biggerstaff's] employment placed her at an increased risk of developing bilateral carpal tunnel syndrome as compared to members of the general public.

. . .

45. The Full Commission finds that all medical treatment, examinations, and evaluations received by plaintiff for her hands, wrists and arms were reasonably necessary to effect a cure, provide relief, or lessen her period of disability.

Based on these findings, the Commission concluded that "[Biggerstaff] has shown through the greater weight of evidence of record that her bilateral carpal tunnel syndrome is due to causes and conditions that were characteristic of and peculiar to her employment with [Petsmart] and is, thus, an occupational disease." The Commission denied Biggerstaff's claim for injury by accident to her back. The Commission then awarded Biggerstaff temporary total disability compensation at the weekly rate of $730.00 from 28 June 2006 and continuing until further order of the Commission. Defendants appeal.

On appeal, defendants question whether the Commission's findings of fact were supported by competent evidence in (I) determining Biggerstaff suffered from a compensable occupational disease and (II) awarding Biggerstaff temporary total disability.

*Standard of Review*

"The standard of review on appeal to this Court of a workers' compensation case is whether there is any competent evidence in the record to support the Commission's findings of fact, and whether these findings support the conclusions of the Commission." *Russell v. Lowes Prod. Distribution*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993) (citation omitted).

> An appellate court reviewing a workers' compensation claim does not have the right to weigh the evidence and decide the issue on the basis of its weight. The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding. In reviewing the evidence, we are required, in accordance with the Supreme Court's mandate of liberal construction in favor of awarding benefits, to take the evidence in the light most favorable to plaintiff.

*Trivette v. Mid-South Mgmt., Inc.*, 154 N.C. App. 140, 143-44, 571 S.E.2d 692, 695 (2002) (internal citations and quotations omitted).

*I*

[1] First, defendants question whether the Commission's findings of fact supporting its conclusion that Biggerstaff suffered from a compensable occupational disease as described under N.C. Gen. Stat. § 97-53(13) were supported by competent evidence.

> The Commission may not wholly disregard competent evidence; however, as the sole judge of witness credibility and the weight to be given to witness testimony, the Commission may believe all or a part or none of any witness's testimony. The Commission is not required to accept the testimony of a witness, even if the testimony is uncontradicted. Nor is the Commission required to offer reasons for its credibility determinations.

*Hassell v. Onslow County Bd. of Educ.*, 362 N.C. 299, 306-07, 661 S.E.2d 709, 715 (2008) (internal citations and quotations omitted).

In order to show entitlement to compensation for disability resulting from an occupational disease covered by N.C.G.S. § 97-53(13), a plaintiff must show the following:

> (1) that her disablement results from an occupational disease encompassed by G.S. 97-53(13), i.e., an occupational disease due to causes and conditions which are characteristic of and pecu-

liar to a particular trade, occupation or employment as distinguished from an ordinary disease of life to which the general public is equally exposed outside of the employment; and (2) the extent of the disablement resulting from said occupational disease, i.e., whether she is totally or partially disabled as a result of the disease.

*Morrison v. Burlington Indus.*, 304 N.C. 1, 12, 282 S.E.2d 458, 466-67 (1981) (emphasis omitted). Defendants challenge the Commission's findings of fact numbered 39, 41, 42, 43, and 45.

Defendants first challenge finding of fact number 39 that "Mr. Gorrod mistakenly believed that approximately forty percent (40%) of [Biggerstaff's] duties were clerical in nature, when the greater weight of evidence shows that approximately ninety percent (90%) of [Biggerstaff's] duties involved 'hands-on' grooming of animals."

Natalie Kurtz, a Petsmart Salon Manager who worked with Biggerstaff while she was employed at Petsmart, testified that she groomed seven to eight dogs a day and, on average, grooming took one to two hours per dog. Biggerstaff also testified that during 2005 and 2006, on an average day, she would groom seven to eight dogs, and it would take seven and a half hours or more depending on what she had to do that day. Further, Biggerstaff testified that she spent "[p]robably ninety-five percent" of her average work day grooming animals. Therefore, we hold there was sufficient evidence for the Commission to find that the "evidence shows that approximately ninety percent (90%) of [Biggerstaff's] duties involved 'hands-on' grooming of animals."

Also, under finding of fact number 39, defendants contest the Commission's finding that "Mr. Gorrod . . . acknowledged that if [Biggerstaff's] duties involved more grooming than he had originally understood, the job would place her at greater risk of developing a cumulative trauma disorder, such as bilateral carpel [sic] tunnel syndrome, than was shown in his report."

During his deposition, Gorrod testified that he was familiar with NIOSH studies regarding cumulative trauma disorders. And, those studies state that vibration is an ergo stressor or risk factor for cumulative trauma disorders that is to be considered within a job. Gorrod testified that if Biggerstaff's workday was split eighty percent (80%) grooming and twenty percent (20%) administrative, rather than his initial assessment of sixty percent (60%) grooming and forty percent (40%) salon management, her risk factor/ergo stressor on a scale of

zero to ten (0-10) would increase from two, low risk, and "more likely be a five, moderate." Therefore, we hold there was sufficient evidence for the Commission to find that "Mr. Gorrod . . . acknowledged that if [Biggerstaff's] duties involved more grooming than he had originally understood, the job would place her at greater risk of developing a cumulative trauma disorder, such as bilateral carpel [sic] tunnel syndrome, than as shown in his report."

Also, under finding of fact number 39, defendants contest the Commission's finding that "Mr. Gorrod stated that he knew nothing about [Biggerstaff] or how she performed her work . . . ." However, Gorrod testified as follows during his deposition:

Counsel: For the record, Mr. Gorrod, you've never met Ms. Biggerstaff?

Gorrod: No, sir.

Counsel: You've never spoken with Ms. Biggerstaff?

Gorrod: Not that I'm aware of. No, sir.

Counsel: You've never had an opportunity to observe her working as a groomer?

Gorrod: No.

Therefore, we hold there was sufficient evidence presented for the Commission to find that Gorrod stated that he "knew nothing about [Biggerstaff] or how she performed her work . . . ."

Also, under finding of fact number 39, defendants contest the Commission's finding that "Mr. Gorrod observed [Petsmart's] groomers on, what the record shows, to be a slow day. Therefore, the work observed by Mr. Gorrod did not accurately reflect the typical work or the typical pace of the work performed by [Biggerstaff]."

Gorrod testified that he observed the groomers in the Petsmart grooming salon for approximately an hour and fifty minutes. Tommy Wayne Fulcher, the store director at the Petsmart at which Biggerstaff was employed, testified that he was present when Gorrod came to assess the groomers. Fulcher testified that Gorrod "spent a couple of hours" with the groomers along with the salon manager. When asked if "it was a normal day at the store as far as the pace of work[,]" Fulcher responded, "If anything, it might have been a little slow." Natalie Kurtz, the salon manager on duty when Gorrod performed his assessment also testified that "[i]t was slower that day. There

weren't as many dogs." Therefore, we hold there was sufficient evidence presented for the Commission to find that "Mr. Gorrod observed [Petsmart's] groomers on, what the record shows, to be a slow day. Therefore, the work observed by Gorrod did not accurately reflect the typical work or the typical pace of the work performed by [Biggerstaff]."

Defendants next challenge the Commission's finding of fact number 41 that after "reviewing the testimony of each physician in this matter, the Full Commission gives greater weight to the [o]pinions of Dr. Krakauer as opposed to Dr. Edwards." Defendants contest the Commission's finding that "Dr. Edwards opinions were based in part on Mr. Gorrod's report, which inaccurately represented that [Biggerstaff] performed clerical duties for forty percent (40%) of her day." After a review of the record evidence, we cannot conclusively determine that Dr. Edwards' opinion was based on Gorrod's report; however, as previously stated, the Commission is "the sole judge of witness credibility and the weight to be given to witness testimony . . . ." *Hassell*, 362 N.C. at 306, 661 S.E.2d at 715 (citations and quotations omitted). Therefore, we overrule defendants' argument.

Defendants next challenge the Commission's findings of fact numbers 42 and 43. In finding of fact number 42, the Commission found that Dr. Krakauer had examined Biggerstaff and he was aware of the duties of a dog groomer as well as the "hand, wrist, and arm motions necessary to perform those duties. In addition, Dr. Krakauer was aware [Biggerstaff] groomed pets for approximately 85 to 90% of her work day . . . ."

Dr. Krakauer testified that he first saw Biggerstaff as a patient on 11 July 2006 when she exhibited numbness and tingling in her hands. Dr. Krakauer testified that he reviewed a video and letter provided to him by Biggerstaff. The video was of a self-employed dog groomer illustrating the physical activity involved in dog grooming. The letter described the video as well as disparities between the actions illustrated on the video and actions Biggerstaff took when she groomed dogs. The letter also included two questions involving the potential effects dog grooming may have had on Biggerstaff. Dr. Krakauer testified that he had responded in the affirmative to the first question:

> Considering the physical demands of Ms. Biggerstaff's duties as a dog groomer, specifically including the pace of her work, her use of vibrating clippers and the use of her hands and wrists, in your opinion, to a reasonable degree of medical certainty, did Ms.

Biggerstaff's work as a dog groomer cause or *significantly contribute to* her development of carpal tunnel syndrome?

(Emphasis added). But, Dr. Krakauer further testified that, as opposed to counsel, he felt more comfortable putting greater emphasis on the phrase "significantly contributed to."

Krakauer: I think we feel more comfortable talking about contributing factors, and as she described the work to me and as I reviewed it, coming to the conclusion that that work put her at increased risk compared to the general population, I feel comfortable with that. The view that the work is a—was—a contributor to her development of carpal tunnel syndrome, I feel comfortable with that.

Counsel: Okay. Do you hold those opinions, Doctor, to a reasonable degree of medical certainty?

Krakauer: Yes.

Counsel: Would your opinions that you just expressed change any if the Industrial Commission was to find that Ms. Biggerstaff groomed for less than seven and a half hours a day, for instance, for seven hours a day?

Krakauer: No.

Therefore, we hold that there was sufficient evidence of record for the Commission to find that Dr. Krakauer was aware of the duties of a dog groomer as well as the "hand, wrist, and arm motions necessary to perform those duties. [And,] [i]n addition, Dr. Krakauer was aware [Biggerstaff] groomed pets for approximately 85 to 90% of her work day . . . ."

In finding of fact number 43, the Commission found that "[Biggerstaff's] employment with [Petsmart] significantly contributed to her development of bilateral carpal tunnel syndrome. Further, [Biggerstaff's] employment placed her at an increased risk of developing bilateral carpal tunnel syndrome as compared to members of the general public." Based upon the previous discussion, we hold there was sufficient evidence to support this finding.

In finding of fact number 45, the Commission found that "all medical treatment, examinations, and evaluations received by [Biggerstaff] for her hands, wrists and arms were reasonably nec-

essary to effect, provide relief, or lessen her period of disability." Though defendants assigned error to this finding, they failed to present us with an argument on this issue. Thus, we deem this assignment of error abandoned. *See* N.C. R. App. P. 28(a) ("Questions raised by assignments of error in appeals from trial tribunals but not then presented and discussed in a party's brief are deemed abandoned.").

For the aforementioned reasons, we hold the Commission's findings of fact numbers 39, 41, 42, and 43 were supported by competent evidence in the record that in turn support the conclusion of law that Biggerstaff suffered a compensable occupational disease. Accordingly, these arguments and assignments of error are overruled.

*II*

**[2]** Next, defendants argue that the Commission's award of temporary total disability benefits from the date of injury and continuing are not supported by competent evidence of record. We agree.

"The term 'disability' means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982). "In order to obtain compensation under the Workers' Compensation Act, the claimant has the burden of proving the existence of his disability and its extent." *Saums v. Raleigh Community Hospital*, 346 N.C. 760, 763, 487 S.E.2d 746, 749 (1997) (citation omitted).

> [T]o support a conclusion of disability, the Commission must find: (1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment, (2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) that this individual's incapacity to earn was caused by plaintiff's injury.

*Hilliard*, 305 N.C. at 595, 290 S.E.2d at 683.

> [A] plaintiff may satisfy this initial burden by one of several approaches: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is

capable of some work but that it would be futile because of pre-existing conditions, i.e., age, experience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.

*Trivette*, 154 N.C. App. 140, 146, 571 S.E.2d 692, 696 (2002) (citing *Russell*, 108 N.C. App. at 765-66, 425 S.E.2d at 457 (internal citations omitted)).

Dr. Krakauer saw Biggerstaff on 11 July 2006. An EMG test was performed 18 July 2006 which showed that she suffered from " '[l]eft mild to moderate median neuropathy,' that's carpal tunnel. 'Median neuropathy at the wrist as evidenced by left median motor distal latency that was relatively prolonged. Right borderline median neuropathy at the wrist. No evidence of ulnar neuropathy. No evidence of cervical radiculopathy or brachioplexopathy.' " On 21 September 2006, Dr. Krakauer performed a right carpal tunnel release surgery and, on 27 November 2006, performed a left carpal tunnel release surgery. On 3 January 2007, Dr. Krakauer wrote Biggerstaff a note that she was not to return to work. On 22 February 2007, Dr. Krakauer wrote that Biggerstaff may return to work 19 March 2007 but due to her injury was restricted from lifting, pushing, or pulling twenty-five pounds or more with both hands.

In an affidavit submitted to the Commission along with a motion to receive additional evidence, Biggerstaff asserts that the last day she worked for Petsmart was 27 June 2006 whereupon she did not work again until 7 December 2007 at which time she was employed by Johnston County Public Schools as a substitute teacher who earned $140.00 during that month. On 22 March 2008, the Commission awarded Biggerstaff "temporary total disability compensation at the weekly rate of $730.00 from June 28, 2006, and continuing until further order of the Commission."

We cannot determine from the record evidence whether plaintiff earned wages in any employment between 28 June 2006 and 7 December 2007 and, if so, whether her injury prevented her from earning any wages or prevented her from earning the same wages as before her injury. Therefore, we reverse the Commission's award of temporary total disability payments and remand for further findings as to whether Biggerstaff (1) was incapable after her injury of earning the same wages she had earned before her injury in the same employment, (2) was incapable after her injury of earning the same wages

she had earned before her injury in any other employment, and (3) whether her incapacity was caused by her injury.

Affirmed in part; reversed and remanded in part.

Judges McGEE and GEER concur.